IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRY G. LOPER,               )<br>                                              )<br>       Plaintiff,              )<br>                                              )<br>       v.                              )<br>                                              )<br>CAROLYN W. COLVIN,      )<br>Acting Commissioner of the Social )<br>Security Administration,[1]   )<br>                                              )<br>       Defendant.            ) | Case No. CIV-12-137-SPS |

## OPINION AND ORDER

The claimant Terry G. Loper requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2]Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 8, 1961, and was forty-nine years old at the time of the administrative hearing.  (Tr. 27).  He graduated high school and completed two years of college, and has worked as a unit operator.  (Tr. 16, 156).  The claimant alleges that he has been unable to work since July 28, 2004, due to a neck injury, including a fusion at C5-7.  (Tr. 10, 145).

## Procedural History

On December 30, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  His application was denied.  ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 19, 2010.  (Tr. 10-18).  The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour

workday, but he could not lift, reach, or manipulate objects, or work above shoulder height. Additionally, he could not do work activity requiring repetitive pushing or pulling with the upper extremities, and while he could occasionally bend, he could not kneel, climb, or twist repetitively from side to side. (Tr. 13). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e.g.*, final inspector, counter clerk, or rental clerk. (Tr. 17).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinion of his treating physician, Dr. Archana Barve; (ii) by failing to find his vertigo and upper extremity numbness to be severe impairments and failing to address them at step four; and (iii) by failing to conduct a proper credibility analysis. The Court finds the second contention persuasive.

The ALJ found that the claimant had the severe impairment of degenerative disc disease of the cervical spine. (Tr. 12). Relevant medical records reveal that the claimant injured his neck while on the job in December 2003. (Tr. 249). A March 31, 2004 MRI revealed disc bulges, bilateral neuroforaminal narrowing and borderline cervical canal stenosis at C5/6 and C6/7. (Tr. 307). He was treated conservatively at first, but eventually underwent an anterior cervical disc fusion of the C5-C7 in July 2004. (Tr. 245, 281-282). Before and after surgery, he received a number of steroid injections to help manage the pain, but reported no long-term benefits from those. (Tr. 226, 261-267, 275-277, 290-298, 358, 363, 368). Additionally, he was prescribed a TENS unit, because

clinically he was not doing as well as expected. (Tr. 207, 240). The claimant also had physical therapy from October 29, 2004 through November 19, 2004; from February 28, 2005 through April 8, 2005; and from April 11, 2006 through August 14, 2006. (Tr. 194-202, 337-352, 455-469). His treating physician and physical therapist both objectively noted that the claimant had an improved range of motion as well as fewer muscle spasms, but he continued to complain of pain. (Tr. 273-274, 310). X-rays on January 17, 2005 showed a completely solid fusion in the lower portion of the neck, and there was no abnormal subluxation, instability, or other change higher in the neck. The recommendation was that the claimant seek a rehabilitation doctor. (Tr. 239). A June 2005 MRI revealed that the claimant was status post fusion at C5-C6 and C6-C7, with right uncal vertebral hypertrophy resulting in moderate right foraminal stenosis and possible entrapment of the right C7 nerve, along with 1 to 2 mm mucosal thickening of both maxillary sinuses with 1 cm retention cyst or polyp in right maxillary sinus. (Tr. 411). On June 22, 2005, Dr. Archana Barve stated that she "would be surprised if he would fall into anything above a light-duty category." (Tr. 261). On August 8, an exam revealed possible right C7 radiculitis, and underwent a C7 cervical selective epidural nerve root block. (Tr. 416, 422-423). On February 16, the claimant underwent a right C6-7 laminotomy and foraminotomy, and facet arthrodesis. (Tr. 440, 442-443). A May 2006 radiology report revealed a stable fusion at C5-6 and C6-7 levels, with no visible compromise of the spinal canal and a normal range of motion without subluxation or compromise of the spinal canal. (Tr. 435). On July 13, 2007, physical therapist Jason Manning conducted an assessment and stated that the claimant could perform up to

medium work.  (Tr. 492-495).  Dr. John Ellis completed a Worker's Compensation assessment of the claimant on September 6, 2007, finding that the claimant had been temporarily totally disabled as a result of his original injury from July 29, 2004 through the date of the report.  He found that the claimant had a 60% total combined injury of the whole man due to his neck injury, 12% total permanent partial impairment to the right elbow, 40% total permanent partial impairment to the left elbow, with a 20% total permanent partial impairment due to psychological overlay.  (Tr. 498-507).  In November 2007, Dr. Barve stated that she believed the claimant was capable of medium duty work, but could not repetitively twist or bend his neck, was limited with regard to above chest and overhead work due to his cervical spine restrictions, and could lift 10 pounds constantly, 25 pounds frequently, 50 pounds occasionally, and push/pull up to 25 pounds.  (Tr. 575-577).  On January 5, 2010, Dr. Barve completed a Medical Source Statement, finding that the claimant could lift 10 pounds frequently and 20 pounds occasionally, could stand/walk/sit two hours in an eight-hour workday, but could only continuously sit for forty-five minutes at a time and that he was required to lie down during the day to manage pain.  (Tr. 655-656).  Additionally, she stated that the claimant could never climb, due to vertigo, and that he could only occasionally balance, stoop, kneel, crouch, crawl, reach, and feel.  (Tr. 656).  She also stated that he had environmental restrictions due to intermittent vertigo.  (Tr. 656).  She based his limitations on chronic neck pain, shoulder pain, upper extremity pain and chronic headaches, right arm numbness and tingling, as well as intermittent vertigo.  She indicated that her assessment applied from July 13, 2007 through the present.  (Tr. 656).

-6-

The claimant was diagnosed with carpal tunnel syndrome and had surgery on December 11, 2006. (Tr. 445-446, 472-474). Following this surgery, the claimant frequently complained of numbness in his hands. (Tr. 498, 520, 571, 573, 583-587). He was also treated for vertigo on November 23, 2004, and continued to report dizziness a number of times, stating that he had to prop himself up on a number of pillows at night in order to prevent dizziness. (Tr. 278, 498, 518, 566-572, 593).

At the administrative hearing, the claimant testified that his impairments included the neck injury fusion at C5-6 and C6-7, as well as vertigo and tingling in his arms. (Tr. 33-34). He testified that he had gone through two surgeries on his neck, that the first surgery had helped "to some extent," that now his impairments cause more frequent muscle spasms and "sleepness" in his hands rather than pain, but his neck is never pain-free. (Tr. 36-37). He stated that the numbness begins with muscle spasms, then goes down into his fingers. (Tr. 38). He testified that he can use his right arm to pick up small objects like coins or paper clips, to hold a can or coffee cup, and grip a doorknob, but that taking lids of jars is harder. (Tr. 39). Additionally, he stated that his penmanship has gotten worse and he has a harder time gripping a writing instrument over time. (Tr. 39). He stated that using his arms to wash dishes out in front of him can lead to the start of muscle spasms. (Tr. 40). He testified that his vertigo begins with pain in his neck, and makes him nauseated, and he testified that he has to take medication to attempt to minimize the episodes. With medication, he stated that the spells last approximately four to five days. (Tr. 40-41). He indicated he had experienced a spell ten days earlier, and the one before that had been two months previous. (Tr. 41). In addition to medications

for dizziness and nausea, he stated that he takes medications for pain, muscle spasms, the numbness and tingling, and to help him sleep at night. (Tr. 42). Upon further questioning as to his vertigo, the claimant testified that he originally had vertigo episodes about once a month, that he had had "a pretty good period and didn't every have any," but that they had started again. (Tr. 49). He estimated that he has an episode every two to three months. (Tr. 49).

In his written opinion, the ALJ summarized the claimant's testimony, and the medical record. At step two, he found that the claimant's vertigo did not support functional limitations resulting from this condition for the requisite 12 months, and found that the claimant's carpal tunnel syndrome did not limit his ability to work. (Tr. 13). The ALJ discussed the imaging in the record related to the claimant's cervical spine, as well as the treatment notes and physical therapy reports, finding that they supported an RFC for light work. (Tr. 14-15). Additionally, the ALJ afforded great weight to the opinions of the state reviewing physicians who found he could do light work with postural limitations related to climbing ladders, ropes, and scaffolding, and found that they were consistent with the claimant's treating physician, Dr. Barve. (Tr. 15). The ALJ then rejected Dr. Barve's 2010 MSS, finding it inconsistent with her July 2007 release to medium work, and gave greater weight to her opinions from 2005 and 2007, which released the claimant to light and medium work with restrictions similar to the RFC he assigned. (Tr. 15-16). The ALJ then discredited the claimant's testimony and found him capable of performing a limited range of light work. (Tr. 14, 16).

The ALJ found that the claimant suffered from the severe impairment of degenerative disc disease of the cervical spine, and any failure to find the claimant's vertigo, carpal tunnel syndrome, or upper extremity numbness severe as step two would ordinarily be harmless error because the ALJ would nevertheless be required to consider the effects of the impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523).  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  But here the error *was not* harmless, because the ALJ failed to account for the claimant's nonsevere impairments in assessing his RFC.  Additionally, the ALJ failed to properly assess the combined effect of all the

-9-

claimant's impairments – both severe and nonsevere – in assessing his RFC. *See id.* (In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to properly assess the claimant's RFC at step four, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma